# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CATHEDRAL ART
METAL CO., INC.

       Plaintiff,

    v.

DIVINITY BOUTIQUE, LLC and
NICOLE BRAYDEN GIFTS, LLC

       Defendant.

Civil Action No. _____

## PLAINTIFF CATHEDRAL ART METAL CO., INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR <u>TEMPORARY RESTRAINING ORDER</u>

**TABLE OF CONTENTS**

I.   INTRODUCTION ..........................................................................................1

II.  BACKGROUND .........................................................................................2

III. ARGUMENT AND CITATION OF AUTHORITIES ...................................5

  A. Cathedral Art Is Likely To Succeed On The Merits ...................................... 6

    1. Divinity Boutique has infringed upon Cathedral Art's trademark rights...6

      a. Strength of the Trademark....................................................................10

      b. Similarity of the Marks ........................................................................10

      c. Similarity of Goods ..............................................................................11

      d. Identity of Sales Methods and Purchasers ...........................................12

      e. Identity of Advertising Methods or Media...........................................13

      f. Defendants' Intent ................................................................................14

      g. Actual Confusion..................................................................................16

    2. Divinity Boutique has infringed Cathedral Art's trade dress rights.........18

      a. The trade dress of Cathedral Art's products and Divinity's products
         is confusing similar ..............................................................................18

      b. Cathedral Art's trade dress is non-functional......................................19

      c. Cathedral Art's trade dress has acquired secondary meaning.............20

  B. Cathedral Art Is Suffering Irreparable Harm And The Balance of Equities
     Strongly Favors Injunctive Relief................................................................. 21

  C. A Temporary Restraining Order Would Cause No Cognizable Harm to
     Divinity ......................................................................................................... 23

  D. A Temporary Restraining Order Is Consistent With The Public Interest .... 24

IV. CONCLUSION.............................................................................................24

## I.   __INTRODUCTION__

Plaintiff Cathedral Art Metal Co., Inc. ("Cathedral Art") is the owner and seller of the highly successful "Amazing Woman" line of homeware products and gift items, which are characterized by the trademark AMAZING WOMAN and a distinctive trade dress that includes a stylized script writing presentation of the mark AMAZING WOMAN on a soft and soothing color palette, and typically further includes a textual presentation of traditional feminine virtues and attributes. The product line has been extremely successful both in terms of sales and developing brand recognition in the homeware and giftware marketplace.

Defendants Divinity Boutique LLC and Nicole Brayden Gifts LLC (collectively "Divinity Boutique") have misappropriated and are infringing Cathedral's exclusive rights in the AMAZING WOMAN trademark, and the associated trade dress.  Divinity Boutique is presently showing and offering at the International Gift Home Furnishing Market currently being held in Atlanta (the 2018 Atlanta Gift Show) the same homeware and giftware items, and those items bear Cathedral Art's AMAZING WOMAN trademark.  Moreover, Divinity Boutique's items present Cathedral Art's AMAZING WOMAN mark in a stylized script writing on a soft and soothing color palette, frequently with text that espouses traditional feminine virtues and attributes, which further infringes

1

Cathedral Art's trade dress.  Customers are being misled and confused, including professional buyers at the Atlanta Gift Show.  Immediate temporary relief is necessary to protect the public from such confusion and deception, and to preserve Cathedral Art's goodwill as symbolized by its AMAZING WOMAN trademark and associated trade dress. Cathedral presently seeks a temporary restraining order to stop this infringement at the 2018 Atlanta Gift Show, which runs until January 16.[1] Cathedral's motion for a temporary restraining order should be granted.

## II.   <u>BACKGROUND</u>

The Verified Complaint filed herewith generally sets out the background of this dispute. See Complaint, ¶¶ 1-63.  Briefly summarized, the following highlights key facts for consideration by the Court.

Plaintiff Cathedral Art Metal Co., Inc. ("Cathedral Art") and Defendants Divinity Boutique, LLC and Nicole Brayden Gifts, LLC (collectively, "Defendants" or "Divinity Boutique") compete in the homewares and giftware marketplace. Both parties are presently exhibiting at the Atlanta Gift Show, which runs until January 16, 2018 at the AmericasMart in downtown Atlanta.

Cathedral Art is the exclusive successor-in-interest to the Abbey Press

---

[1] In accordance with Rule 65 of the Federal Rules of Civil Procedure, Cathedral Art intends to further seek a preliminary injunction.

product lines, which includes homewares and giftwares (pie plates, book holders, baking products, etc.) offered under the well-known "AMAZING WOMAN" mark and trade dress. Abbey Press, a division of the Saint Meinrad Archabbey in southern Indiana, sold the product line and all rights thereto (e.g., the AMAZING WOMAN trademark and trade dress) to Cathedral Art in 2017. Cathedral Art has continued to exclusively offer the product line, and expanded promotion of both the goods and the trademark. Sales of such products since the acquisition have exceeded $500,000, and the Amazing Woman Line products area a leading and primary line offering of Cathedral Art.

On Sunday, January 7, 2018, when setting up for the Atlanta Gift Show, Cathedral Art learned for the first time that Defendants were offering a competing line of similar products under the same mark: AMAZING WOMAN. More particularly, Defendants are offering the same type of homewares and giftwares under the designation AMAZING WOMAN. And, the Defendants also appear to have copied Cathedral Art's trade dress, which includes presenting the mark AMAZING WOMAN in a stylized script against or on a soft color (typically blue or green) background with flowers and text that espouses traditional feminine values and attributes. For example, Cathedral Art offers a pie plate that, it appears, Defendants have copied:

3





**Cathedral Art's "Recipe for An Amazing Woman" Pie Plate**

**Brayden Gifts' "Recipe for An Amazing Woman" Pie Plate**

Customers, even professional buyers that attend trade shows, are being

confused and misled into thinking that Defendants' goods bearing the mark

AMAZING WOMAN either originate with or are in some way associated with

4

Cathedral Art (or its predecessor-in-interest, Abbey Press). Immediate temporary relief is necessary to protect the public from confusion and deception, and to protect Cathedral Art's goodwill and reputation as symbolized by the AMAZING WOMAN trademark and trade dress.

## III.   ARGUMENT AND CITATION OF AUTHORITIES

This Court has the power to enter the requested emergency injunctive relief. Fed. R. Civ. P. 65(b). The granting of a temporary restraining order (and a preliminary injunction) rests in the discretion of the Court. *Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*, 642 F. Supp. 1031, 1031 (N.D. Ga. 1986). Moreover, federal and Georgia law authorize this Court to grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement. *Id.*

To secure a temporary restraining order, the movant must establish that: (1) "it has a substantial likelihood of success on the merits," (2) it will suffer irreparable injury if the relief is not granted, (3) the threatened injury outweighs the harm the relief may inflict on the non-moving party, and (4) entry of relief "would not be adverse to the public interest." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). As discussed below, Cathedral Art meets the standards for a temporary restraining order and requests that the Court enter an

order that prohibits Divinity Boutique from selling, offering for sale, and/or otherwise distributing its infringing line of "Amazing Woman" merchandise.

## A.   Cathedral Art Is Likely To Succeed On The Merits

### 1.   Divinity Boutique has infringed upon Cathedral Art's trademark rights.

Trademarks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition by prohibiting the use in interstate commerce of any "word, term, name, symbol or device, or any false designation of origin which is likely to cause confusion as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. §  1125(a). To establish a *prima facie* case of trademark infringement under Section 43(a), a plaintiff must show "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir.1997). Here, Cathedral Art has common-law trademark rights in AMAZING WOMAN. Defendants are

6

infringing those common law rights by use of the exact same designation in connection with the same type of goods.

It is to be noted that Cathedral Art need not have a registered mark. "The use of another's unregistered, i.e., common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512-13 (11th Cir. 1984) (internal quotations and citations omitted). Marks that are capable of distinguishing one's goods from those of others are sufficiently "distinctive," are thus eligible for federal registration or protection as common law marks under the Lanham Act. 15 U.S.C. § 1052(e), (f); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 2757 (1992); *Coach House Rest., Inc. v. Coach & Six Rests., Inc.* 934 F.2d 1551, 1559 (11th Cir.1991). The Eleventh Circuit recognizes four categories of distinctiveness, listed in ascending order of strength: "(1) generic-marks that suggest the basic nature of the product or service; (2) descriptive-marks that identify the characteristic or quality of a product or service; (3) suggestive-marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4)

7

arbitrary or fanciful-marks that bear no relationship to the product or service, and the strongest category of trademarks." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797-98 (11th Cir.2003). The mark AMAZING WOMAN is arbitrary for homeware products and gift items. It does not describe any feature of such products and does not suggest the nature of any such product. For example, a book holder has nothing to do with an "amazing woman." While women may use such products, the mark is neither descriptive nor suggestive of the products themselves. It is worth noting that the U.S. Trademark Office has approved of Cathedral Art's federal registration application for publication, thus confirming that the mark is distinctive and capable of distinguishing Cathedral Art's goods from those of others.

Georgia law is effectively the same. For example, the Georgia anti-dilution statute states:

> Any owner of a trademark or service mark registered under this part may proceed by action to enjoin the manufacture, use, display, or sale of any counterfeits or imitations thereof; and any court of competent jurisdiction may grant injunctions to restrain such manufacture, use, display, or sale as may be by the court deemed just and reasonable and may require the defendants to pay to such owner all profits derived from such wrongful manufacture, use, display, or sale, and all damages suffered by reason of such wrongful manufacture, use, display, or sale, or both profits and damages. The enumeration of any right or remedy in this part shall not affect a registrant's right to prosecute under any penal law of this state.

O.C.G.A. § 10-1-451(a) (2010). The test applied by Georgia courts as to whether an injunction should be granted against an alleged trademark infringer is whether the public is likely to be deceived. *Gordy v. Dunwoody*, 74 S.E.2d 886 (Ga. 1953). The *Gordy* case concerned restaurants with similar names operated by the plaintiff in Atlanta and Athens and the defendant in Macon. *Id.* at 889. The *Gordy* court expounded that "[a]n encroachment upon the business of another may be made [even] without direct competition." *Id.* at 891.

In order to establish infringement, a plaintiff must show a likelihood of confusion between the respective marks. In making such a determination, the courts look at a multifactor test, evaluating the following seven factors: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1360 (11th Cir.2007). Once again, Georgia law is effectively the same. *Ackerman Sec. Sys., Inc. v. Design Sec. Sys., Inc.*, 412 S.E.2d 588, 589 (Ga. App. 1991).

9

### a.     Strength of the Trademark

Strong marks are more likely to be protected than weak marks. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983). Cathedral Art's AMAZING WOMAN mark is a strong trademark both because it is arbitrary and "inherently distinctive" and because it has been used by Cathedral Art and its predecessor company since at least 2007 in all 50 states. The record before this Court demonstrates that Cathedral Art's mark is strong. See Verified Complaint, ¶¶ 16 - 36. In fact, Cathedral Art's consumers (i.e., resellers of the goods) choose to use Cathedral Art's products bearing the AMAZING WOMAN mark (and trade dress) on the covers of their <u>own</u> advertising material and catalogs for promotional purposes. To find that the mark AMAZING WOMAN is anything but strong runs directly counter to the record before the Court.

### b.     Similarity of the Marks

 The marks here are identical. Divinity Boutique is using the very words "Amazing Woman" in connection with the same products. In fact, Divinity Boutique has adopted a highly similar cursive script for the "Amazing Woman" mark, as shown:



| Cathedral Art's Product | Divinity Boutique's Product |

The sight, sound, and meaning of the respective "marks" are identical in all respects, thus demonstrating a likelihood of confusion.

### c.    Similarity of Goods

The parties' respective goods are also identical. A simple side-by-side comparison of the parties' respective displays at a trade show confirms this:



| **Cathedral Art's Display** | **Divinity Boutique's Display** |

### d.     Identity of Sales Methods and Purchasers

The parties' respective sales methods and purchasers are also identical. For instance, both Cathedral Art and Divinity Boutique are currently present at the Atlanta Gift Show taking place at AmericasMart Atlanta. Of the floors and floors of vendors at this trade show, their respective booths are on the same floor, within close proximity of each other (i.e., less than 120 feet). Cathedral Art's booth, in fact, is only six booths down and across the hall from Divinity Boutique's booth. Thus, any consumers or purchasers who are attending the show will most certainly

12

visit (or at least pass by) both Divinity Boutique's booth and Cathedral Art's booth, both of which include confusingly similar, identical "Amazing Woman" goods. Both parties sell through catalogs, both in paper and on the Internet. Both parties sell to retail outlets or others who then resell the goods to the public. Even aside from the present gift show in Atlanta, Cathedral Art and Divinity Boutique ultimately market and sell their goods to overlapping consumers (which are resellers that ultimately thereafter market and sell to the end-consumer). Thus, this factor demonstrates a likelihood of confusion.

### e.   Identity of Advertising Methods or Media

Cathedral Art and Divinity Boutique also use the same form of advertising media in that both parties attend trade shows, such as the one presently at AmericasMart Atlanta, at which the parties advertise or otherwise promote their goods for sale to resellers (which thereafter sell to end-consumers). In other words, at trade shows such as the ones attended by the parties, advertisements do not take their typical form of television or radio commercials, but instead are in the form of the parties' presence. Nonetheless, the resellers that purchase goods from Cathedral Art and Divinity Boutique typically advertise those products, and then they do, the advertisements can similar, if not identical, forms.

13




**Cathedral Art's Catalog**                    **Divinity Boutique's Catalog**

### f.    Defendants' Intent

The evidence shows that Divinity adopted Cathedral Art's AMAZING WOMAN mark with the intent of deriving benefit from the reputation of Cathedral Art. This fact alone can be sufficient to justify the inference that there is confusing similarity. *Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980).

The Defendants' intent here is shown in various ways. First, Defendants had direct access to the Plaintiff's AMAZING WOMAN trademark and goods when it shared a showroom with Cathedral Art's predecessor in interest. It is no coincidence that after Abbey Press determined to no longer share a showroom with

Divinity Boutique that the Defendants came out with their new, infringing "Amazing Woman" products. Second, Cathedral Art is informed that the Defendants' principal, Mr. Schwartz, wished to purchase the Abbey Press product lines, including the AMAZING WOMAN product lines. Having been unsuccessful in that effort, it again is no coincidence that Defendants have adopted and used an identical facsimile of the mark "AMAZING WOMAN" with the same goods. Third, the Defendants have not only copied the mark, they have adopted a remarkably similar trade dress. For example, not only do the Defendants present "Amazing Woman" in a script writing on very similar color backgrounds (such as blue and/or green), the Defendants have also taken to providing inspirational text espousing traditional female values and attributes with the mark. Just as Cathedral Art offers its "Recipe for an Amazing Woman" poem on a pie plate, the Defendants offer a "Recipe for an Amazing Woman" poem on a pie plate (and other items). In fact, focusing on those respective poems, they are very similar. The title is the same. The term "Recipe" is the same and particularly telling – as there is no such thing as a "recipe" for a human being. The word has a unique connotation in this context. A recipe is a set of instructions or a procedure for making a product from various ingredients. One cannot "make" a woman, thus giving the term "recipe" a special meaning in context of the poem. Each verse of the poem begins

15

with an active verb, characteristics typically attributed to traditional, respected feminine values. Finally, if the "recipe" is followed – the result in both poems is the same – "one Amazing Woman – You!" Such similarities are overwhelming evidence of a bad faith intent.

Divinity Boutique has not only adopted and began to use a mark identical to Cathedral Art's AMAZING WOMAN mark, but also offer identical products under the AMAZING WOMAN mark to identical consumers only down the hall at the same trade show. The evidence thus demonstrates that Divinity Boutique intended to copy Cathedral Art's mark. *See Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.*, 618 F.2d 950, 954 (2d Cir. 1980) ("if there was intentional copying the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded.") *See also Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 (5th Cir. 1977).

### g.   Actual Confusion

The best evidence of likelihood of confusion is provided by evidence of actual confusion. *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975). While the presentation of such evidence is not essential to a finding of likelihood of confusion, the quantum of evidence needed to show actual confusion is

16

relatively small. *Id.*; *Jellibeans, Inc. v. Skating Clubs of Georgia*, 716 F.2d 833, 845 (11th Cir. 1983). The evidence before the Court demonstrates that at least as early as a trade show in September 2017, a customer informed Cathedral Art that there was an identical booth right down from Cathedral Art's booth that looked to be essentially identical. That customer went on to state its confusion between the two booths because of the similarity of the appearance of the products and the similarly offered products, including, among other items, cutting boards and mugs. Cathedral Art thus submits that such actual confusion is highly persuasive, demonstrates that a likelihood of confusion exists, and that continued infringing use by the Defendants will result in yet more confusion.

Cathedral Art will prevail on the merits of its trademark claim. Cathedral Art's AMAZING WOMAN mark is strong and distinctive. Divinity Boutique is using the same mark on the same goods offered to the same customers using the same advertising media. The evidence strongly appears to show that Divinity Boutique intentionally copied and patterned its mark after Cathedral Art's mark to take advantage of its strength and Cathedral Art's substantial goodwill as the rightful successor to Abbey Press. There is a significant likelihood of confusion.

17

**2.**    **Divinity Boutique has infringed Cathedral Art's trade dress rights.**

In order to prevail on a claim for trade dress infringement under Section 43(a) of the Lanham Act, a plaintiff must prove three elements: (1) that the trade dress of the two products is confusingly similar; (2) that the features of the trade dress are primarily non-functional; and (3) that the trade dress is inherently distinctive or has acquired secondary meaning. *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1038 (11th Cir. 1996).

**a.**    **The trade dress of Cathedral Art's products and Divinity's products is confusing similar**

Trade dress pertains to the total image of a product that includes, *inter alia*, features such as size, shape, color/color combinations, and graphics/designs. Here, Cathedral Art's products include specific color combinations, such as green and blue, in addition to "Amazing Woman" presented in a simulated script handwriting. With specific reference to the poem, the words "Recipe For An" are in uppercase block letters. Additional design features include flowers, as well as linear flourishes below the "Amazing Woman" script, all presented (frequently) with inspirational text.

The "trade dress" of Divinity Boutique's products follows that of and mimics Cathedral Art's trade dress. In particular, Divinity Boutique's products also

18

include "Amazing Woman" in a simulated handwriting style, along with the words "Recipe For An" in uppercase block letters. Divinity Boutique's products also include floral elements, such as a flower that is the "dot" to the letter "i" in the phrase "Amazing Woman." Divinity Boutique's products also include linear flourishes that extend off the letter "g" of the word "Amazing" and the letter "w" of the word "Woman." Comparing the colors of both Cathedral Art's products and Divinity Boutique's products, similarities can be readily noted. The trade dress of the Cathedral Art's products and Divinity Boutique's products are thus confusingly similar.

### b.      Cathedral Art's trade dress is non-functional

There is no bright line test for functionality. *John H. Harland*, 711 F.2d at 983. The Supreme Court has characterized a functional feature as one that "is essential to the use or purpose of the article or [one that] affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982). The Supreme Court has also stated that "a design is legally functional, and thus unprotectable, if it is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 775 (1992).

19

The features of Cathedral Art's trade dress are non-functional. As discussed above, the several features of Cathedral Art's trade dress pertain to words and script used on the products, as well as the colors and floral patterns. None of these features pertains to the configuration and/or functionality of Cathedral Art's products. Thus, the trade dress of Cathedral Art's products is non-functional.

### c.      Cathedral Art's trade dress has acquired secondary meaning

In an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, as is the case here, a product's design is distinctive, and therefore protectable, upon a showing of secondary meaning. *B & F Sys., Inc. v. LeBlanc*, 519 Fed. Appx. 537, 539 (11th Cir. 2013) (*per curiam*) (citing and quoting *Wal-Mart Stores v. Samara Brothers, Inc.*, 529 U.S. 205, 216 (2000)). Secondary meaning "occurs when, in the minds of the public, the primary significance of the [trade dress] is to identify the source of the product rather than the product itself." *Samara*, 529 U.S. at 211. *See also Univ. of Fla. v. KPB, Inc.*, 89 F.3d 773, 776 n.5 (11th Cir. 1996).

The evidence before this Court demonstrates that in the minds of the relevant public, Cathedral Art's trade dress is associated with its goods. As discussed above, at least one of Cathedral Art's customers was actually confused at a trade show where both Cathedral Art and Divinity Boutique were present. In that

20

instance, Cathedral Art's consumer first saw Divinity Boutique's Amazing Woman products before seeing Cathedral Art's Amazing Woman products, commenting that she thought she had already visited Cathedral Art's booth and was confused. This situation further evidences that Cathedral Art's trade dress is viewed by the public as being marketed and sold by Cathedral Art. Cathedral Art's trade dress has thus acquired secondary meaning with the relevant public. Cathedral Art has shown a likelihood of success on its trade dress claims.

### B.  Cathedral Art Is Suffering Irreparable Harm And The Balance of Equities Strongly Favors Injunctive Relief

Cathedral Art has suffered and continues to suffer irreparable harm as a result of Divinity Boutique's infringement of Cathedral Art's trademark and trade dress rights. And the harm occasioned by Divinity Boutique's trademark and trade dress infringement may be presumed to be irreparable. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, No. 1:06-cv-1678-JTC, slip op. at (N.D. Ga. Mar. 30, 2007) (citing *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)); *see also Robarb, Inc. v. Pool Builders Supply of the Carolinas, Inc.*, 696 F. Supp. 621, 629-30 (N.D. Ga. 1988) (finding irreparable may be presumed when plaintiff made showing of substantial likelihood that it will prevail on the merits of its trade dress and trademark infringement claims).

21

The irreparable harm suffered here is the loss of the unique association that Cathedral Art rightly possesses by virtue of being the sole heir to the Abbey Press name, reputation and product line, all as embodied in the mark AMAZING WOMAN. Defendants are being unjustly enriched by receiving the benefit of that association when they offer and sell products that bear Cathedral Art's AMAZING WOMAN trademark. Cathedral Art is also suffering irreparable harm by the loss of control over its own trademark. Cathedral Art has no ability to control the quality of the goods offered by the Defendants even though they are using Catherdral Art's trademark.  There is no monetary remedy for such harms. Even where a lost sale can be documented, that does not compensate Cathedral Art for the loss of reputation resulting from the customer's bad experience of mistakenly believing that they had purchased legitimate AMAZING WOMAN goods.

Moreover, the balance of equities favors Cathedral Art. There is no legally cognizable harm in the Defendants' having to stop misleading and confusing the public. In contrast, the resultant harm to Cathedral Art's goodwill, not to mention lost sales, is very significant. Cathedral Art is not asking that Defendants shut down their business or for some other drastic relief. Rather, Cathedral Art is asking merely that the Defendants abide by the law and stop selling those products that

22

bear the infringing AMAZING WOMAN trademark and trade dress. This factor favors preliminary relief.

### C. A Temporary Restraining Order Would Cause No Cognizable Harm to Divinity

The balance of hardships favor Cathedral Art, especially in this case where the defendant was aware of Cathedral Art's products, and the defendant had an affirmative duty to select a dissimilar trade dress or product appearance to avoid confusion and "can scarcely complain of any harm befalling on its on account of that decision." *Teledyne Industries, Inc. v. Windemere Product, Inc.*, 433 F. Supp. 710, 714 (S.D. Fla. 1977).

The evidence before this Court demonstrates that Divinity Boutique has been aware of Cathedral Art and its products for a number of years, including its highly successful line of Amazing Woman products. The record also shows that Cathedral Art has used its AMAZING WOMAN mark and this trade dress for a number of years and revenue from Cathedral Art's AMAZING WOMAN products is a main source of revenue. On the other hand, Divinity Boutique chose its identical and infringing "Amazing Woman" designation and strikingly similar trade dress with full knowledge of Cathedral Art's products and prior use of the mark. Divinity Boutique can thus and should be required to stop selling those products (and ultimately shift to a non-infringing mark and trade dress).

23

As shown, the balance of hardships favors Cathedral Art. Moreover, courts have held that when a defendant, like Divinity Boutique in the present case, decides to trade on a plaintiff's goodwill or name, that defendant assumes the risk that a court might later enjoin its further use. *Miss Universe Inc. v. Little Miss USA Inc.*, 212 U.S.P.Q. 423, 425 (N.D. Ga. 1980).

**D.   A Temporary Restraining Order Is Consistent With The Public Interest**

Issuance of an injunction would not harm the public interest, which favors protecting consumers from confusion. Courts in this Circuit have followed suit and routinely recognize that "the public interest is served by preventing consumer confusion in the marketplace." *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (affirming preliminary injunction in trademark infringement action). Here, the issuance of a temporary restraining order will preserve the status quo (Defendants have not used the infringing mark for very long) and prevent further actual confusion.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant Cathedral Art's motion for a temporary restraining order.

Respectfully submitted this 10th day of January 2018.

/s/ Walter Hill Levie III
Stephen M. Schaetzel
Georgia State Bar No. 628653
Walter Hill Levie III
Georgia State Bar No. 415569
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street N.E., Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile: (404) 645-7707
*sschaetzel@mcciplaw.com*
*tlevie@mcciplaw.com*

*Counsel for Plaintiff*
*Cathedral Art Metal Co., Inc.*

Of counsel:

Thomas R. Noel (pro hac vice pending)
NOEL LAW
203 South Main Street, Suite 2
Providence, Rhode Island 02903
Telephone: (401) 272-7400
Facsimile: (401) 621-5688
*tnoel@lawnoel.com*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CATHEDRAL ART METAL CO., INC.<br><br>       Plaintiff,<br><br>      v.<br><br>DIVINITY BOUTIQUE, LLC and NICOLE BRAYDEN GIFTS, LLC<br><br>       Defendant. | Civil Action No. _____ |

## LOCAL RULE 7.1D CERTIFICATION

The undersigned hereby certifies that the foregoing **PLAINTIFF CATHEDRAL ART METAL CO., INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER** was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

Dated this 10th day of January 2018.

/s/ Walter Hill Levie III
Walter Hill Levie III

26

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CATHEDRAL ART<br>METAL CO., INC.<br><br>        Plaintiff,<br><br>    v.<br><br>DIVINITY BOUTIQUE, LLC and<br>NICOLE BRAYDEN GIFTS, LLC<br><br>        Defendant. | Civil Action No. _____ |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 10th day of January 2018, the

foregoing **PLAINTIFF CATHEDRAL ART METAL CO., INC.'S BRIEF IN**

**SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER**

was electronically filed with the Clerk of Court using the CM/ECF system, which

will automatically send e-mail notification of such filing to all attorneys of record.

Dated: January 10, 2018              /s/ Walter Hill Levie III
                                     Walter Hill Levie III

27