**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CATHEDRAL ART<br>METAL CO., INC.<br><br>        Plaintiff,<br><br>    v.<br><br>DIVINITY BOUTIQUE, LLC and<br>NICOLE BRAYDEN GIFTS, LLC<br><br>        Defendant. | Civil Action No. _____ |

**[PROPOSED] TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Plaintiff Cathedral Art Metal Co., Inc.'s Motion for Temporary Restraining Order. After considering the record in this action, including Plaintiff's Verified Complaint, and conducting a hearing, the Court finds as follows:

Plaintiff Cathedral Art Metal Co., Inc. ("Cathedral Art") is the owner and seller of the "Amazing Woman" line of homeware products and gift items, which are characterized by the trademark AMAZING WOMAN and a distinctive trade dress that includes a stylized script writing presentation of the mark AMAZING WOMAN on a soft and soothing color palette, and typically further includes a

1

textual presentation of traditional feminine virtues and attributes. The product line has been extremely successful both in terms of sales and developing brand recognition in the homeware and giftware marketplace.

Defendants Divinity Boutique LLC and Nicole Brayden Gifts LLC (collectively "Defendants" or "Divinity Boutique") are presently showing and offering at the International Gift Home Furnishing Market currently being held in Atlanta (the 2018 Atlanta Gift Show) the same homeware and giftware items as Cathedral Art, and the Defendants' items bear Cathedral Art's AMAZING WOMAN trademark. Moreover, Divinity Boutique's items present Cathedral Art's AMAZING WOMAN mark in a stylized script writing on a soft and soothing color palette, frequently with text that espouses traditional feminine virtues and attributes.  Thus, Divinity Boutique's items include significant elements of and parrot Cathedral Art's trade dress.

Cathedral Art seeks a temporary restraining order under Fed. R. Civ. P. 65(b) to stop the offering, sale and distribution of Divinity Boutique's products bearing the AMAZING WOMAN trademark and trade dress.  To secure such a temporary restraining order, Cathedral Art must establish that: (1) "it has a substantial likelihood of success on the merits," (2) it will suffer irreparable injury if the relief is not granted, (3) the threatened injury outweighs the harm the relief

may inflict on the non-moving party, and (4) entry of relief "would not be adverse to the public interest." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). As shown in Cathedral Art's Motion and Verified Complaint and discussed below, Cathedral Art has established that a temporary restraining order is appropriate.

    **A.**    **Cathedral Art Is Likely To Succeed On The Merits**

           i.    <u>Cathedral Art's Trademark Infringement Claim</u>

Regarding Cathedral Art's claim for trademark infringement, the Court finds that Cathedral Art has exclusive trademark rights in and to the AMAZING WOMAN mark, and that the Defendants are using an identical AMAZING WOMAN mark that is likely to cause confusion, mistake and deception of consumers. The Court finds that Cathedral Art has established a likelihood of confusion by showing as follows:

- Cathedral Art's AMAZING WOMAN mark is a strong trademark both because it is arbitrary and "inherently distinctive" and because it has been used by Cathedral Art and its predecessor company since at least 2007 in all 50 states. Thus, Cathedral Art has superior rights in and to the mark.
- The respective marks at issue are identical. The sight, sound, and meaning of Cathedral Art's AMAZING WOMAN mark is

identical in all material respects, thus demonstrating a likelihood of confusion.

- The parties' respective goods are identical.
- The parties' respective sales methods and purchasers are also identical. At present, both Cathedral Art and Divinity Boutique are currently at the Atlanta Gift Show taking place at AmericasMart Atlanta.
- Cathedral Art and Divinity Boutique use the same advertising media. Both parties attend trade shows, such as the one presently at AmericasMart Atlanta, at which the parties advertise or otherwise promote their goods for sale to resellers (which thereafter sell to end-consumers). Both parties use other channels of trade such as product catalogs and the Internet, and distribute to retail outlets for resale of the subject houseware and giftware products.
- The evidence shows that Divinity Boutique adopted Cathedral Art's AMAZING WOMAN mark with the intent of deriving benefit from the reputation of Cathedral Art and the preceding owner of the AMAZING WOMAN mark, to which Cathedral Art has succeeded. Divinity Boutique has not only adopted and began to use a mark identical to Cathedral Art's AMAZING WOMAN mark, but also offers nearly identical products under the AMAZING WOMAN mark to identical consumers. The number of similarities between the parties' respective uses of the mark AMAZING WOMAN and the associated trade dress strongly leads

        to a conclusion of intentional adoption and use of the mark and trade dress by the Defendants.

- There has been at least one instance of actual confusion. At least as early as a trade show in September 2017, a customer informed Cathedral Art that there was an identical booth, presumably Divinity Boutique's, right down from Cathedral Art's booth that looked to be essentially identical. That customer went on to state its confusion between the two booths was because of the similarity of the appearance of the products and the similarly offered products, including, among other items, cutting boards, pie plates, serving dishes, and mugs.

In view of the foregoing, the Court finds that Cathedral Art will likely prevail on the merits of its trademark claim. Cathedral Art's AMAZING WOMAN mark is strong and distinctive. Divinity Boutique is using the same mark on the same goods offered to the same customers using the same advertising media. The evidence strongly appears to show that Divinity Boutique intentionally copied and patterned its mark after Cathedral Art's mark to take advantage of its strength and Cathedral Art's substantial goodwill as the rightful successor to Abbey Press.

      ii.   Cathedral Art's Trade Dress Claim

Regarding Cathedral Art's trade dress claim, in order to prevail on said claim, Cathedral Art must prove three elements: (1) that the trade dress of the two products is confusingly similar; (2) that the features of the trade dress are primarily

non-functional; and (3) that the trade dress is inherently distinctive or has acquired secondary meaning. *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1038 (11th Cir. 1996). The Court finds that Cathedral Art is likely to succeed as to its trade dress claim because it has established as follows:

- Cathedral Art's products include specific color combinations, such as green and blue, in addition to the words "Amazing Woman" presented in a simulated script handwriting. There are other similarities.  For example, Cathedral Art provides a deep pie dish with a poem entitled "Recipe for an Amazing Woman."  With specific reference thereto, the words "Recipe For An" are in uppercase block letters. Additional design features include flowers, as well as linear flourishes below the "Amazing Woman" script, all presented with inspirational text. The "trade dress" of Divinity Boutique's products follows that of and mimics Cathedral Art's trade dress. In particular, Divinity Boutique's products also include the words "Amazing Woman" in a simulated handwriting style, along with the words "Recipe For An" in uppercase block letters. Divinity Boutique's products also include floral elements, such as a flower that is the "dot" to the letter "i" in the phrase "Amazing Woman." Divinity Boutique's products also include linear flourishes that extend following the letter "g" of the word "Amazing" and the letter "w" of the word "Woman." Comparing the colors of both Cathedral Art's products and Divinity Boutique's products, similarities are readily noted. The trade dress

    of the Cathedral Art's products and Divinity Boutique's products are thus confusingly similar.

- The features of Cathedral Art's trade dress are non-functional, and have acquired a secondary meaning in that the trade dress is recognized as indicating source (in Cathedral Art, including its predecessor in interest, Abbey Press) in the housewares and giftware industry.

- The evidence before this Court demonstrates that in the minds of the relevant public, Cathedral Art's trade dress is associated with its goods to identify a single source. Further, at least one of Cathedral Art's customers was actually confused at a trade show where both Cathedral Art and Divinity Boutique presented the products at issue.

In view of the foregoing, Cathedral Art has shown a likelihood of success on its trade dress claims.

  **B.**  **Cathedral Art Is Suffering Irreparable Harm And The Balance of Equities Strongly Favors Injunctive Relief**

  The Court may presume irreparable harm based on Divinity Boutique's trademark and trade dress infringement. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, No. 1:06-cv-1678-JTC, slip op. at (N.D. Ga. Mar. 30, 2007) (citing *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)); *see also Robarb, Inc. v. Pool Builders Supply of the Carolinas, Inc.*, 696 F.

Supp. 621, 629-30 (N.D. Ga. 1988) (finding irreparable may be presumed when plaintiff made showing of substantial likelihood that it will prevail on the merits of its trade dress and trademark infringement claims).

Even so, Cathedral Art has demonstrated irreparable harm – the loss of the unique association that Cathedral Art rightly possesses by virtue of being the sole heir to the Abbey Gift name and the Abbey Press, reputation and product line, all as embodied in the mark AMAZING WOMAN. Cathedral Art has further suffered irreparable harm in that it is no longer in control of the quality of goods offered for sale and sold under its AMAZING WOMAN trademark.  The use of the mark AMAZING WOMAN by an unrelated party without control of the quality of goods offered in conjunction with the mark is such a harm for which monetary damages are inadequate.  In fact, there is no monetary remedy for such harms. Moreover, the balance of equities favors Cathedral Art. In contrast, there is no legally cognizable harm to the Defendants in having to stop misleading and confusing the public, whereas the above harms to Cathedral Art's goodwill are significant. This factor favors preliminary relief.

### C. A Temporary Restraining Order Would Cause No Cognizable Harm to Divinity Boutique

Further to the foregoing, the balance of hardships favors Cathedral Art. The evidence before this Court demonstrates that Divinity Boutique has been aware of

Cathedral Art and its predecessor's products for a number of years, including its highly successful line of Amazing Woman products. The record also shows that Cathedral Art and its predecessor have used the AMAZING WOMAN mark and this trade dress for a number of years and revenue from Cathedral Art's AMAZING WOMAN products is a significant source of revenue, the loss or diminution of which combined with the loss of control over the source and quality of the products would be extremely difficult to quantify. Alternatively, the Defendants are being unjustly enriched by use of and trading on the goodwill and reputation of the AMAZING WOMAN trademark and trade dress.

Accordingly, the balance of hardships favors Cathedral Art.  Moreover, courts have held that when a defendant, like Divinity Boutique, decides to trade on a plaintiff's goodwill or name, that defendant assumes the risk that a court might later enjoin its further use. *Miss Universe Inc. v. Little Miss USA Inc.*, 212 U.S.P.Q. 423, 425 (N.D. Ga. 1980).

    **D.**    **A Temporary Restraining Order Is Consistent With The Public Interest**

Issuance of an injunction is consistent with the public interest, which favors protecting consumers from confusion. The Eleventh Circuit has recognized that "the public interest is served by preventing consumer confusion in the marketplace." *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th

Cir. 2001) (affirming preliminary injunction in trademark infringement action). Here, the issuance of a temporary restraining order will preserve the status quo and prevent further actual confusion, and prevent any likelihood of confusion until the Court can address the matter at a preliminary injunction stage.

In view of the foregoing, and it appearing to the Court that immediate and irreparable injury will result to Plaintiff unless Defendants are temporarily and preliminarily enjoined as provided herein, it is hereby ORDERED that until further Order of this Court:

- Defendants, their officers, agents, servants, employees, attorneys, all those in active concert or participation with them, and all other parties properly enjoined by law, are temporarily restrained and preliminarily enjoined from, and shall immediately stop selling products bearing the "Amazing Woman" trademark and products sold under or in conjunction with and otherwise infringing the AMAZING WOMAN trademark and trade dress at the Atlanta Gift Show; and
- Defendants, their officers, agents, servants, employees, attorneys, all those in active concert or participation with them, and all other parties properly enjoined by law, are temporarily restrained and preliminarily enjoined from unfairly competing with Plaintiff in any manner whatsoever, including by offering and selling products that bear the AMAZING WOMAN trademark and products sold

under or in conjunction with and otherwise infringing the AMAZING WOMAN trademark and/or the AMAZING WOMAN trade dress and by making a false designation of origin, false designation or false representation in violation of Section 43 of the Lanham Act.

Pursuant to Fed. R. Civ. P. 65, Plaintiff shall deposit _____ ($_____) with the Court as security, for the payment of such costs and damages as may be incurred or suffered by Defendants, if Defendants are found to have been wrongfully enjoined or restrained.

This the _____ day of _____, 2018.

_____
United States District Court Judge
Northern District of Georgia