# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CATHEDRAL ART METAL CO.,

        Plaintiff,

v.

DIVINITY BOUTIQUE, LLC and
NICOLE BRAYDEN GIFTS, LLC,

        Defendants.

1:18-cv-141-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiff Cathedral Art Metal Co.'s ("Plaintiff" or "Cathedral Art") Motion for Preliminary Injunction [13] (the "Motion").

## I. BACKGROUND

### A. Procedural History

On January 10, 2018, Plaintiff filed a Complaint [1] and a Motion for Temporary Restraining Order [2] ("TRO Motion") seeking to preclude Defendants Divinity Boutique, LLC, and Nicole Brayden Gifts, LLC (collectively, "Defendants"), from "selling goods bearing Plaintiff's AMAZING WOMAN

trademark and/or associated trade dress." ([2] at 1). On January 12, 2018, the Court conducted a hearing on the TRO Motion, during which all parties were represented by counsel. ([26] (Transcript)). On January 12, 2018, the Court issued an order denying Plaintiff's TRO Motion, finding that Plaintiff had then failed to demonstrate a substantial likelihood of succeeding on their trademark or trade dress claims. The Court set an accelerated schedule for filing and briefing of Plaintiff's motion for preliminary injunction. ([11]).

Plaintiff filed a Motion for Preliminary Injunction [13] on January 16, 2018, providing additional evidence supporting its trademark and trade dress claims. Defendants filed a Response in Opposition to the Motion [23] and Plaintiff filed a Reply [27].[1] On January 24, 2018, the Court conducted a hearing on the Motion. ([31], [34] (Transcript)). During the hearing, Leo A. Tracey, President of Plaintiff Cathedral Art, and Keith Schwartz, Managing Member of Defendant Nicole Brayden Gifts, LLC ("Nicole Brayden"), testified. ([23-4] at ¶2, [14-2] at ¶1). The Court allowed the parties to submit post-hearing written memoranda. ([35-1], [37]).

---

[1]    Because several of the documents the parties submitted in support of their briefs contain confidential and sensitive information, the parties filed motions for leave to file matters under seal [16], [29], and [39]. Having reviewed the contents of the documents the parties seek to seal, the Court finds they contain confidential and sensitive information, and the Court grants the parties' motions.

B.    <u>Facts</u>[2]

In 2017, Plaintiff Cathedral Art acquired the Abbey Press Trade Marketing Division ("Abbey Press") of St. Meinrad Archabbey, an Indiana nonprofit corporation.  ([28-3] (Asset Purchase Agreement)).  The acquisition included Abbey Press's products and trademarks related to those products, except for the ABBEY PRESS mark.  (<u>Id.</u> at ¶ 1(b)).

1.    <u>Abbey Press's "Amazing Woman" Products</u>

 The Abbey Press products acquired by Cathedral Art included homeware and giftware products (e.g. pie plate, mug, travel mug, cutting board, spoon rest, cross, plate) known as the "Amazing Woman" collection.  ([28-3 at 13-19 (Schedule 1(b)(i) and 29 (Schedule 12)).  Abbey Press began selling a product bearing an "Amazing Woman" phrase at least as early as 2008.  ([13-2] at 2, 4).  Abbey Press's "Annual catalog thru July 2008" included a pie plate with a poem entitled "Recipe For An Amazing Woman."  (<u>Id.</u> at 4).  Abbey Press continued to sell products with "Amazing Woman" inscriptions up until its acquisition by Cathedral Art.  ([13-2 (Christmas 2008 Catalog), [27-11] (Annual Catalog thru

---

[2]    The Court draws facts from the Verified Complaint [1], the parties' submissions on both the Motion for TRO and Motion for Preliminary Injunction, and the testimony and exhibits admitted during the preliminary injunction hearing.

July 2009), [27-12] (Spring 2009 Catalog), [27-13] (Annual Catalog thru July 2010), [27-14] (Spring 2010 Catalog), [27-15] (Annual Catalog thru July 2011), [27-16] (Spring 2011 Catalog), [27-17] (Annual Catalog thru July 2012), [27-18] (Spring 2012 Catalog), [27-19] (Annual Catalog thru July 2013), [27-20] (Spring 2013 Catalog), [27-21] (Annual Catalog thru July 2014), [27-22] (June-December 2014 Catalog), [27-23] (Annual Catalog January-December 2015), [27-24] (Annual Catalog January-December 2016), [27-25] (Annual Catalog January-December 2017)).

Beginning with the original pie plate with a "Recipe for An Amazing Woman" poem, Abbey Press developed an entire collection of "Amazing Woman" products, including soup mugs, plaques, cutting boards, spoon rests, trinket dishes, crosses, cookbook holders, mug and coaster sets, travel mugs, and prayer cards. ([27-25]). At least as early as 2010, Abbey Press identified products bearing the "Amazing Woman" phrase as part of a collection of "Amazing Woman" products. ([27-13] at 3). In 2011, Abbey Press employed a banner-like use of "Amazing Woman" to identify its collection of "Amazing Woman" products in its catalog. By 2016, Abbey Press even identified products that did not bear the "Amazing Woman" phrase as "Amazing Woman" products.

([27-24] at 5 ("Amazing Woman" Figurine); [27-25] at 4 ("Amazing Woman" Rustic Plaque)).

After the acquisition, Cathedral Art continued to sell products from the "Amazing Woman" collection, including in its catalogues identifying the "Amazing Woman" collection with an Amazing Woman banner on pages with Amazing Woman products. Cathedral added a "TM" symbol next to the phrase "Amazing Woman" in their 2018 catalog. ([6-1] at 11-16). The "Amazing Woman" product line was a "lead" product line for Abbey Press, and continues to be so for Cathedral Art. ([7-1] (Olmsted Aff.) at ¶10). 2017 sales of the AMAZING WOMAN product exceeded ████. ([14-2] (Tracey Decl.) at ¶ 21).

Plaintiff submitted six declarations from industry buyers to show that those who purchased "Amazing Woman" products identify the AMAZING WOMAN mark with Abbey Press. ([27-3] Anderson Decl.; [27-4] Bauersachs Decl.; [27-5] Falzone Decl.; [27-6] Hernandez Decl.; [27-7] Prickett Decl.; [27-8] Wagner Decl.).[3] The six declarations contain essentially the same statement

_____

[3]     The Court overrules Defendants' Objections [36] to these exhibits as untimely and inadmissible. Plaintiff filed unsworn statements from all of these declarants, except Ms. Prickett, with its motion for preliminary injunction. The declarations offered as evidence before the preliminary injunction hearing are

identifying Abbey Press as the source of "Amazing Woman" products:

> I knew, and certainly it was known in the industry, that Abbey Press was for many years the exclusive provider of the "Amazing Woman" line of products. I knew that the products originated from Abbey Press because they bore the name "Amazing Woman." So, if I, for example, ordered the "Amazing Woman" coffee mug, I understood that I was ordering an Abbey Press product. The name was displayed in a unique, handwritten script. It was known in the industry that the "Amazing Woman" products originated from Abbey Press. I am not aware of any other party that made or provided "Amazing Woman" products.

See, e.g., [27-3] at ¶ 3.

## 2. Defendants' "Amazing Woman" Products

Defendants compete in the homewares and giftware marketplace with Cathedral Art. Both parties sell at trade shows, in catalogs, and on the Internet. ([7-1] at ¶ 16).

In 2016, Keith Schwartz, President and Managing Member of Nicole Brayden LLC and President of Divinity Boutique LLC, became aware that Abbey Press "was shutting down its trade business." ([23-4] (Schwartz Decl.) at

---

substantially the same as the unsworn statements Plaintiff filed with its Motion. Defendants had ample notice and an opportunity to respond. The Court will consider them. See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir.1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction . . . .").

¶ 7, Tr.[4] at 3, 59).  Nicole Brayden sought to introduce its own line of products "which would have been competitive with Abbey Press goods that Nicole Brayden believed were being discontinued, including the goods bearing the phrase "Amazing Woman."  (Id. at ¶ 8; Tr. at 59).  In a December 7, 2016, email, Mr. Schwartz told his employees:

> We are looking at doing a line called AMAZING WOMAN.  It is based off of the Abbey Press Poem and product line of the same name.   Please read below and send me back comments and suggested edits if you have any.  Below is the abbey press version on a cutting board.

([24] at 2).  Mr. Schwartz's email included a photograph of an Abbey Press cutting board with the "Recipe For An Amazing Woman" poem.  (Id.).  Mr. Schwartz drafted a modified "Recipe For An Amazing Woman" poem and supervised the creation of artwork for Defendants' cutting board.  (Id. at 2-6). Mr. Schwartz approved the artwork, stating: "I think it is a really great piece of art and will accomplish our goal of providing the market with a replacement." (Id. at 9).

Abbey Press received news that Defendants were developing their own line of "Amazing Woman" products.  ([23-3] at 2).  On January 4, 2017, Greg

---

[4]     "Tr." refers to the Transcript of the Preliminary Injunction Hearing [34].

Tate, the General Manager of Abbey Press, emailed Mr. Schwartz expressing

concern.  (Id.)  Mr. Tate stated:

> I am certain you are aware that the Abbey Press Trade (Wholesale)
> Division will be closing June 30, 2017, however, we are still
> actively promoting and selling our Amazing Woman line until then.
> We are currently in serious discussion with a buyer who will be
> assuming ownership of that product line after June 30.  So, be
> aware, there is and will be someone keeping watch over the Abbey
> Press product line to ensure it is not being infringed upon.
>
> It is not in anyone's best interest to actively pursue another
> company's product concepts.  It is vital to the industry that each
> company be unique in their own way and respect the niche each
> company provides.

 ([23-3] at 2).

After this email, Defendants continued their effort to develop

"replacement" "Amazing Woman" products and, as a result, Defendants

developed an entire collection of "Amazing Woman" products.  ([1-3] at 2, 4-6).

Defendants advertised their "Amazing Woman" items in their 2018 catalog.  ([1-

3] at 2, 4-6).  Defendants also marketed those items at the January 2018

International Gift Home Furnishing Market held in Atlanta (the "Atlanta Gift

Mart").  Defendants marketed items similar to those offered by Abbey Press and

Cathedral, including a pie plate with a "Recipe For An Amazing Woman" poem,

mugs, cutting boards, and spoon rests.



| Cathedral Art's Product | Divinity Boutique's Product |









**Cathedral Art's Products**
*Cogburn Decl., Dkt. 6-1 at Ex. C*

**Defendants' Products**
*Compl., Dkt. 1 at Ex. C*

At the Atlanta Gift Mart, Defendants displayed their "Amazing Woman" collection in their showroom in a manner similar to Cathedral's showroom display:



Cathedral Art's Display      Divinity Boutique's Display

Barbara Olmsted, National Sales Manager & Product Coordinator for Cathedral Art, states that "[o]n January 11, 2018, several buyers [at the Atlanta Gift Mart] expressed confusion about the 'Recipe for An Amazing Woman' poem that appears on both Cathedral Art's products and Defendants' products." ([7-1] at ¶ 19). Olmsted further states that "a buyer from Seventh Avenue came into Cathedral Art's showroom, looked at Cathedral Art's products, and then asked me, "Didn't we just see something like this?" (Id.). When Kelly Harding, a Cathedral Art employee, sent an e-mail to Samantha Parry of Collective Goods, a customer, asking what company came to mind when asked about the product line "Recipe for An Amazing Woman," Ms. Parry responded, "I would say originally Abbey Press.

I know Divinity Boutique has got a similar line now too. Is that what you're referring too?" ([14-2] at ¶ 22, Tr. at 41-42).

C.     <u>Plaintiff's Motion for Preliminary Injunction</u>

Plaintiff asserts it has a common law trademark in AMAZING WOMAN and a protectable trade dress (a stylized AMAZING WOMAN trademark with a "Recipe for an Amazing Woman" poem). Plaintiff claims Defendants are infringing on its AMAZING WOMAN trademark and trade dress by selling "Amazing Woman" products that are confusingly similar to Plaintiff's products. Plaintiff further claims that Defendants' unauthorized use of the AMAZING WOMAN trademark and trade dress is irreparably harming its brand and valuable customer goodwill. Plaintiff seeks to enjoin Defendants from "selling products bearing Plaintiff's AMAZING WOMAN trademark and/or associated trade dress, including products that bear the word mark "AMAZING WOMAN" and products that bear a Recipe Poem, namely – "Recipe for an Amazing Woman" in conjunction with a stylized presentation of the AMAZING WOMAN trademark. ([13-1] at ¶2).

Defendants argue that Plaintiff does not have a protectable AMAZING WOMAN trademark or trade dress and that no customer confusion exists or is likely to exist given that it includes a Nicole Brayden logo on its "Amazing

Woman" products. Defendants further assert that an injunction would severely impact Nicole Brayden's 2018 sales efforts, would result in Nicole Brayden having to incur significant costs to reprint its catalogs, and would undermine its customer relationships.

The parties both are planning to exhibit "Amazing Woman" products at the Las Vegas Winter Market, scheduled to begin on January 28, 2018. (Tr. at 106-07).

## II. DISCUSSION

### A. Legal Standard

The grant or denial of a preliminary injunction rests in the discretion of the Court. Sierra Club v. Georgia Power Co., 180 F.3d 1309, 1310 (11th Cir. 1999). To be eligible for a preliminary injunction a movant must show: (1) a substantial likelihood of prevailing on the merits; (2) that Plaintiff will suffer irreparable injury if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the opposing party; and (4) that if granted, the injunction would not be adverse to the public interest. Fed. R. Civ. P. 65; see Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); Parker v. State Bd. of Pardons and Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001); Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1995). Preliminary

injunctive relief is a drastic and extraordinary remedy which should not be granted

unless the movant can clearly establish each of the four elements. <u>Four Seasons</u>

<u>Hotels and Resorts, B.V. v. Consorcio Barr, S.A.</u>, 320 F.3d 1205, 1210 (11th Cir.

2003).

    B.    <u>Analysis</u>

        1.    <u>Plaintiff's Likelihood of Prevailing on Its Claim of Trademark</u>
            <u>Infringement</u>

The Court finds that Plaintiff demonstrated a substantial likelihood of

succeeding on its trademark claim. To establish trademark infringement under

Section 43(a) of the Lanham Act, Plaintiff bears the burden of demonstrating "(1)

that it had trademark rights in the mark or name at issue and (2) that the other party

had adopted a mark or name that was the same, or confusingly similar to its mark,

such that consumers were likely to confuse the two." <u>Lone Star Steakhouse &</u>

<u>Saloon, Inc. v. Longhorn Steaks, Inc.</u>, 106 F.3d 355, 358 (11th Cir. 1997).

        a.    <u>Plaintiff's Trademark Rights</u>

The Court finds that Plaintiff is substantially likely to succeed in showing

that it has enforceable rights in the "AMAZING WOMAN" mark. Although

Plaintiff does not hold a registered AMAZING WOMAN trademark, the Eleventh

Circuit has recognized "the use of another's unregistered, *i.e.,* common law,

trademark can constitute a violation of § 43(a) where the alleged unregistered

13

trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source." Tana v. Dantanna's, 611 F.3d 767, 772–74 (11th Cir. 2010), citing Conagra, Inc. v. Singleton, 743 F.2d 1508, 1512–13 (11th Cir. 1984) (internal quotations and citations omitted). "However, only those marks that are capable of distinguishing the owner's goods from those of others, *i.e.*, that are sufficiently 'distinctive,' are eligible for federal registration or protection as common law marks under the Lanham Act." Tana, 611 F.3 at 773, citing 15 U.S.C. § 1052(e), (f); Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992); Coach House Rest., Inc. v. Coach & Six Rests., Inc., 934 F.2d 1551, 1559 (11th Cir. 1991).

The evidence presented to the Court shows that the phrase "Amazing Woman" functions as a trademark for Abbey Press. "A trademark's primary function is to signify origin to potential customers and competitors." Thoroughbred Legends, LLC v. The Walt Disney Co., No. 1:07-CV-1275-BBM, 2008 WL 616253, *5 (N.D. Ga. Feb. 12, 2008) (citing Leigh v. Warner Bros., 212 F.3d 1210, 1216–17 (11th Cir. 2000) ("Trademarks . . . answer the question 'Who made it?' rather than 'What is it?'"). To acquire common law rights, a party must show that (1) it is the prior user of the unregistered mark and (2) it acquired a

protectable interest in the mark because the mark is either inherently distinctive or has acquired distinctiveness through a secondary meaning. <u>Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.</u>, 931 F.2d 1519, 1522–23 (11th Cir. 1991). "[A] business does not automatically obtain rights in a mark by using it. A business will obtain rights in a mark upon first use only if the mark is 'inherently distinctive.' If the mark is not inherently distinctive, a business may obtain rights in the mark when it attains a secondary meaning." <u>Id.</u>

The Court finds that the AMAZING WOMAN mark as used by Abbey Press, and now Cathedral Art, is inherently distinctive. The Eleventh Circuit recognizes four categories of distinctiveness, listed in ascending order of strength: (1) generic-marks that suggest the basic nature of the product or service; (2) descriptive-marks that identify the characteristic or quality of a product or service; (3) suggestive-marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful-marks that bear no relationship to the product or service, and the strongest category of trademarks. <u>Tana</u>, 611 F.3 at 774. The latter two categories, suggestive and arbitrary or fanciful marks, "are deemed inherently distinctive, because their intrinsic nature serves to identify a particular source of a product." <u>Id.</u>, citing <u>Two Pesos,</u> 505 U.S at 768. The

AMAZING WOMAN mark as used is inherently distinctive since it is not generic or descriptive of the goods at issue.

Even if the mark were not inherently distinctive—which the Court finds that it is—the evidence also shows that AMAZING WOMAN has acquired secondary meaning and is functioning as a trademark for Abbey Press/Cathedral Art. Four factors determine whether a mark has acquired secondary meaning as a source identifier: (1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture. <u>FN Herstal SA v. Clyde Armory Inc.</u>, 838 F.3d 1071, 1083–84 (11th Cir. 2016). First used by Abbey Press in 2007/2008 as a phrase within the title of a poem on a pie plate,[5] the evidence shows that "Amazing Woman" evolved over the next decade into a descriptor of individual goods bearing that phrase, then into an identifier of a collection of Abbey Press products bearing that phrase, and finally into an identifier of a lead collection of related Abbey Press products, only some of which bear the phrase "Amazing

---

[5] The record does not contain any evidence of use by anyone of the phrase "Amazing Woman" on products before Abbey Press began using it in 2007/2008.

Woman." Abbey Press's catalogs from 2007/2008 to the present reflect a concerted effort on the part of Abbey Press to reinforce a conscious connection in the public's mind between "Amazing Woman" and Abbey Press products. That effort paid off. Six industry customers submitted sworn testimony stating that Abbey Press was the exclusive provider of the "Amazing Woman" line of products and that it was known in the industry that the "Amazing Woman" products originated from Abbey Press. That testimony evidences that "Amazing Woman" served the trademark function of identifying Abbey Press as the source of "Amazing Woman" products.[6]

Mr. Schwartz testified: "I am not aware that [Amazing Woman has] ever been used as an actual trademark in the market." (Tr. at 66). The Court finds that

---

[6] Defendants argue in their closing statement that Plaintiff failed to make a substantial showing of ownership, validity or exclusivity, citing evidence of third-party uses of "amazing woman" first offered at the preliminary injunction hearing. ([37] at 8, citing Tr. 34-37, Def. Exhs. 7, 10, 11, 14, 15, and16). But Defendant did not submit evidence showing the extent of penetration of these products into the market or otherwise demonstrate the effect the existence of these products has on the consumer's perception of "Amazing Woman" as an identifier of Abbey Press. See Unique Sports Prod., Inc. v. Babolat VS, 403 F. Supp. 2d 1229, 1239 (N.D. Ga. 2005) ("The requirement that the plaintiff's use be 'substantially exclusive' makes an allowance for use by others which may be inconsequential or infringing."), citing L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1352 (Fed. Cir. 1999). The Court considers Defendants' evidence of third-party use inconsequential.

Mr. Schwartz's testimony is a legal conclusion and no foundation exists to believe he is qualified to offer it.  The facts contradict Mr. Schwartz's belief about use of the mark.  Mr. Schwartz identified "Amazing Woman" as being a successful line of Abbey Press products warranting "replacement" should Abbey Press withdraw from the market.  Mr. Schwartz himself used all caps (a traditional trademark signifier) to refer to a replacement "AMAZING WOMAN" line of products in 2016.  ([24] at 2).  Mr. Schwartz's use of all caps to refer to the AMAZING WOMAN line of products discredits his repeated self-serving testimony that these are just two generic words that happen to appear in text used in one or more of the items designed and sold by Plaintiff.[7]

The Court finds that Plaintiff has a substantial likelihood of demonstrating a strong, protectable interest in the AMAZING WOMAN mark.

b.    Likelihood of Confusion

The Court finds that Plaintiff has demonstrated a substantial likelihood of success in showing that Defendants' use of "Amazing Woman" is likely to cause consumer confusion.  The Court must consider seven factors when determining

---

[7]    The evidence also shows that Cathedral Art's most recent catalog uses the common law trademark identifier "TM" when using the AMAZING WOMAN mark.

whether a likelihood of consumer confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' trade channels and customers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. Frehling Enters., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1335 (11th Cir.1999). "Of these, the type of mark and the evidence of actual confusion are the most important." Id. (citing Dieter v. B & H Indus. of Sw. Fla., Inc., 880 F.2d 322, 326 (11th Cir.1989)). However, "[t]he issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists ... [r]ather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision." Suntree Tech., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1346 (11th Cir. 2012) (quoting AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531 (11th Cir. 1986), cert. denied, 481 U.S. 1041 (1987)); see also Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 649 (11th Cir. 2007) ("Because the bottom line is the likelihood of confusion, application of the Frehling factors entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.'"). The Court must also be mindful that "sophisticated consumers [of complex goods or services] . . . are less

likely to be confused than casual purchasers of small items." _Florida Int'l Univ. Bd. Of Trustees v. Florida Nat'l Univ., Inc._, 830 F.3d 1242, 1256 (11th Cir. 2016).

Here, the seven _Frehling_ factors all support that that Plaintiff has shown a substantial likelihood of consumer confusion. AMAZING WOMAN has developed into a strong mark for Abbey Press/Cathedral as an identifier of a "lead" product line—so strong that Defendants decided to create an "Amazing Woman" product line of its own. Defendants began, in recent weeks, to use an identical mark on goods it is selling, which are the same types of goods sold previously by Abbey Press and now sold by Plaintiff. "The likelihood of confusion is greater when an infringer uses the exact trademark." _Turner Greenberg Assocs., Inc. v. C&C Imports, Inc._, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Defendants use the same trade channels (e.g. trade shows, internet) as Cathedral Art to sell those goods to the same customers (_i.e._ gift shop owners and end consumers) using similar annual catalogs. Even Defendants' Atlanta Gift Mart display mimics that of Cathedral Art.

Defendants' intent to copy Plaintiff's AMAZING WOMAN product line is overwhelming. Defendants had access to Abbey Press products and purposely sought to develop a "replacement" line to fill a hole that Defendants' anticipated would open upon Abbey Press's withdrawal from the market. (Tr. at 77; [24] at 2).

Defendants succeeded in developing a complete line of products that are remarkably, if not disturbingly, similar to Abbey Press's "Amazing Woman" products. Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc., 618 F.2d 950, 954 (2nd Cir. 1980) ("[I]f there was intentional copying the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded."). The evidence shows that Defendants developed and launched their line of products with an intent to capitalize on the goodwill of Abbey Press's "Amazing Woman" products.[8]

Mr. Schwartz testified that it was not his intent to confuse customers. (Tr. at 61). This statement belies belief. Mr. Schwartz noted that the packaging for Defendants' products is marked with a Nicole Brayden company logo, company website, and company address in some cases. (Tr. at 61-63). Mr. Schwartz testified that "[i]f it's one of our products, we want them to know it's one of our products."[9] (Tr. at 63). But a customer's knowledge that a product is being

---

[8]    That Defendants intended to benefit from Plaintiff's "Amazing Woman" trademark and to create the impression that its products originated from the Plaintiff is underscored by Defendants' use of almost exactly the same display presentation at the Atlanta Gift Show as that designed and used by Plaintiff.
[9]    Mr. Schwartz testified about the labeling on the *packaging* of its "Amazing Woman" napkins. Mr. Schwartz did not testify about whether a company logo or other identifier is present on the napkins themselves. Nor did Defendant offer

marketed by a certain company does not eliminate customer confusion over the ultimate source of the product. The readily apparent similarities between Defendants' products and Plaintiff's products are too great, too numerous, and span too many products to credit Mr. Schwartz's testimony that Defendants independently developed their products and did not intend to confuse customers.

Mr. Schwartz testified that they "look for themes that we feel will resonate with our customers" when independently developing their products. (Tr. at 65). Remarkably, the "theme" they felt would "resonate" with customers duplicated not only the design elements of Plaintiff's product but also the placement of them in the design. Defendants' theme also accentuated the "Amazing Woman" phrase using initial capital letters in a font that is practically indistinguishable from that used by Plaintiff. Interestingly, and tellingly, Mr. Schwartz concocted distinctions between the items Plaintiff designed and sold and those his companies developed and claimed that any similarities were just "coincidence." (Tr. at 92-97). He testified, for example, that a butterfly on the cutting board designed and sold by Plaintiff was in "kind of the middle" of the item where the butterfly on the

---

evidence that any of its unwrapped products, as displayed at the Atlanta Gift Mart, for example, are labeled with a corporate identifier.

Defendants' item was "in the upper right."  (Tr. at 96).  The butterflies are plainly in the same upper right quadrant of both.


**Cathedral Art's Products**
*Cogburn Decl., Dkt. 6-1 at Ex. C*


**Defendants' Products**
*Compl., Dkt. 1 at Ex. C*

([32-1 at 4-5; Compare Plaintiff's Exh. 3 and Exh. 4).  Mr. Schwartz even tried to distinguish the nature of Plaintiff's butterfly saying it looked to him like a "moth."  (Tr. at 96).  This testimony is overtly misleading, and borders on being dishonest.

Considering Mr. Schwartz's testimony as a whole, the Court finds it concocted and incredible.  The overall competitive strategy enacted by Defendants shows they intended to exploit Plaintiff's "Amazing Woman" mark as their own and claim they were entitled to do so because it was not a protectable trademark under the Lanham Act.

Finally, Plaintiff offered some evidence of actual confusion. "[T]he quantum of evidence needed to show actual confusion is relatively small." Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 937 (11th Cir. 2010). Here, the evidence shows that at least one buyer at the Atlanta Gift Mart was confused by the appearance of "Amazing Woman" products in Defendants' showroom and in Cathedral Art's showroom. In any event, evidence of actual confusion is not necessary to a finding of a likelihood of confusion. Id. at 936, n.19.

The evidence at this stage establishes that Plaintiff has a substantial likelihood of proving that it has protectable interest in the trademark AMAZING WOMAN and that Defendants have adopted a similar or identical mark that is likely to confuse consumers. Plaintiff is substantial likely to succeed on its claim of trademark infringement.

2. Whether Plaintiff Would Suffer Irreparable Harm Absent a Preliminary Injunction

The Court finds that Plaintiff would suffer irreparable harm absent a preliminary injunction. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990). The presumption of irreparable harm in trademark cases that once existed in the

Eleventh Circuit "has been called into question by the Supreme Court's decision in eBay Inc. v. MercExchange, LLC, 547 U.S. 388 [] (2006)."  TracFone Wireless, Inc. v. Clear Choice Connections, Inc., 102 F. Supp. 3d 1321, 1332–33 (S.D. Fla. 2015); Uber Promotions, Inc. v. Uber Techs., Inc., 162 F. Supp. 3d 1253, 1261–62 (N.D. Fla. 2016).  However, the presumption arose because the harm associated with trademark infringement is often irreparable in nature.  See Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc., 735 F.3d 735, 741 (7th Cir. 2013) (Posner, J.) ("[I]rreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion.").  That is the case here.

Failure to grant a preliminary injunction would subject Cathedral Art to a loss in trade and customers and a loss of control over its AMAZING WOMAN product line while risking the substantial goodwill Abbey Press developed in its "Amazing Woman" products in the industry over the last decade.  "[G]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.  Irreparable injury can also be based upon the possibility of confusion." Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 190 (11th Cir. 2005). Plaintiff has demonstrated irreparable harm absent an injunction.

3. Whether the Threatened Injury Outweighs the Harm an Injunction would Inflict on Defendants

The Court finds that the threatened injury to Cathedral Art outweighs the harm an injunction would inflict on Defendants. As explained above, Plaintiff faces substantial irreparable injury without an injunction. In contrast, Defendants assert that an injunction would severely impact Nicole Brayden's 2018 sales efforts, cause Nicole Brayden to incur costs in excess of $10,000 to reprint its catalogs, "require countless hours to search out and remove the product from every electronic system," and undermine its customer relationships. ([23] at 27). These concerns, if authentic, are largely monetary and Defendants willingly took the risk of introducing "replacement" products in direct competition with Cathedral Art despite Abbey Press's warning that there "will be someone keeping watch over the Abbey Press product line to ensure it is not being infringed upon." ([23-3] at 2). Defendants "can scarcely complain of any harm befalling [them] on account of that decision." Teledyne Industries, Inc. v. Windemere Product, Inc., 433 F. Supp. 710, 714 (S.D. Fla. 1977). The Court finds that the balance of hardships weighs in favor of granting a preliminary injunction.

4.    Whether a Preliminary Injunction would be Adverse to the
      Public Interest

The Court finds that entry of a preliminary injunction would serve the public

interest by preventing further actual confusion.  "[T]he public interest is served by

preventing consumer confusion in the marketplace."  Davidoff & Cie, S.A. v. PLD

Int'l Corp., 263 F.3d 1297, 1304 (11th Cir. 2001) (affirming preliminary injunction

in trademark infringement action).

## III.    CONCLUSION

The Court finds that Cathedral Art has established the four elements

necessary to preliminarily enjoin Defendants'[10] use of the AMAZING WOMAN

mark.[11]  Accordingly, for the foregoing reasons,

---

[10]    Mr. Schwartz testified that Divinity Boutique LLC is "not operational," that
Divinity Boutique today is just a brand under Nicole Brayden Gifts," and that
Divinity Boutique LLC "didn't engage in any of the conduct" at issue.  (Tr. at 73).
The record supports, however, that Divinity Boutique LLC continues to exist as a
viable corporate entity.  Mr. Schwartz is the President of both Defendant Divinity
Boutique LLC and Defendant Nicole Brayden Gifts LLC.  (Tr. at 3).  The designer
of Defendants' accused cutting board, Kim Robinson, identifies herself as "Senior
Product Designer Nicole Brayden Gifts & Divinity Boutique."  ([24-2] at 7).  Mr.
Schwartz and Ms. Robinson both utilize "divinityboutique.com" email addresses.
(Id.)  At the conclusion of the hearing, counsel for Defendants said that Divinity
Boutique LLC intends to file a motion to dismiss for lack of personal jurisdiction,
not because it is not a viable corporate entity that has wound up its business, but
because it was never present in Georgia.  (Tr. at 103-06).  It is undisputed that Mr.
Schwartz was present at the Atlanta Gift Mart showroom where the accused goods
were being marketed and that the showroom was advertised as one presented by

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction [13] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Divinity Boutique, LLC and Nicole Brayden Gifts, LLC (collectively, "Defendants") and all of their officers, agents, servants, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, be preliminarily enjoined from, and shall immediately stop selling products bearing Plaintiff's AMAZING WOMAN trademark, including products that bear the word mark "AMAZING WOMAN" and products that bear a poem entitled "Recipe for an Amazing Woman."

**IT IS FURTHER ORDERED** that Plaintiff Cathedral Art Metal Co., Inc., shall post an injunction bond with the Clerk of Court in the amount of $50,000.00 by the close of business on January 30, 2018.

---

Divinity Boutique. If Defendant Divinity Boutique LLC contends the Court does not have personal jurisdiction over it, it is directed to file its motion to dismiss on or before February 1, 2018.

[11]    The Court believes that, as a practical matter, preliminarily enjoining Defendant from infringing Plaintiff's AMAZING WOMAN mark addresses the entirety of the irreparable harm Plaintiff would suffer absent an injunction and that a ruling on Plaintiff's trade dress claims is not necessary. If either party disagrees, the Court will schedule a teleconference to discuss the issue.

**IT IS FURTHER ORDERED** that the parties' motions to file matters under seal [16], [29], and [39] are **GRANTED**.

**SO ORDERED** this 26th day of January, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE