**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CATHEDRAL ART
METAL CO., INC.,

       Plaintiff,

    v.

DIVINITY BOUTIQUE, LLC and
NICOLE BRAYDEN GIFTS, LLC
d/b/a DIVINITY BOUTIQUE,

       Defendants.

Civil Action No. 1:18-cv-141-WSD

**PLAINTIFF CATHEDRAL ART METAL CO., INC.'S
<u>BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ......................................................................1

II.  STATEMENT OF FACTS ..........................................................3

III. ARGUMENT AND CITATION OF AUTHORITIES ...................9

   A. Divinity's Motion Under Fed. R. Civ. P. 12(b)(2) Should Be Denied.......... 9

      1. Legal Framework......................................................................9

         a.  The Requirements of Georgia's Long Arm Statute Are Met.............10

         b.  The Due Process Requirements Are Met ...........................................13

            i.   The present cause of action arises out of or relates to Divinity's contacts with Georgia....................................................15

            ii.  Divinity purposefully availed itself of the privilege of conducting business activities in Georgia..........................................15

            iii. It is reasonable to hale Divinity into Court in Georgia...................16

            iv. Exercise of jurisdiction over Divinity will not offend "traditional notions of fair play and substantial justice" ....................................16

   B. Defendants' Motion Under Fed. R. Civ. P. 12(b)(6) Should Be Denied ..... 17

IV.  CONCLUSION.............................................................................21

## I.   <u>INTRODUCTION</u>

This Court has personal jurisdiction over Defendant Divinity Boutique, LLC ("Divinity") because Divinity has transacted business in Georgia, committed acts of trademark infringement and unfair competition in Georgia, and caused an injury in Georgia by an act committed outside of Georgia. Divinity purposefully availed itself of this jurisdiction by at least the following acts in Georgia:

1.   Maintaining a "permanent showroom" under its corporate name "Divinity Boutique" at the AmericasMart Atlanta, 230 Peachtree Street, Building 2, Showroom 1340, Atlanta, Georgia;

2.   Having an infringing "Amazing Woman" collection of products delivered to its Atlanta "Divinity Boutique" showroom, and then displaying those products in a display that is still standing in that same showroom today;

3.   Offering for sale and selling its infringing "Amazing Woman" collection of products from its Atlanta "Divinity Boutique" showroom;

4.   Having its President, Keith Schwartz, attend the Atlanta Gift Show in January 2018 to oversee and sell Divinity's infringing collection of "Amazing Woman" products from its showroom; and

5.   Accepting service of the Complaint in its Atlanta "Divinity Boutique" showroom and attending the temporary restraining order hearing on January 12, 2018.[1]

---

[1] In fact, by its attendance at that hearing, Divinity arguably waived any objection to personal jurisdiction. *See Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 786 (11th Cir. 1990) ("If a party enters a case, makes no objection to jurisdiction, and asks the court to act on its behalf in some substantive way, it will be held to have

Yet further, Divinity Boutique maintains an interactive website at "divinityboutique.com." That domain name is registered to "Divinity Boutique." Consumers in Georgia could, and given Divinity's presence at the Atlanta Gift Show, presumably did purchase products from Divinity's "Amazing Woman" collection.

Divinity's assertion that "Divinity Boutique" is a mere "brand" misses the point. Divinity is an "active" corporation that maintains a "permanent showroom" in Atlanta and, as shown below, is scheduled to exhibit goods at that showroom in March 2018. Those and other contacts provide "general jurisdiction." In obtaining and maintaining its "Divinity Boutique" showroom, Divinity purposely availed itself of this jurisdiction. Divinity and its President actively displayed and offered for sale the infringing "Amazing Woman" products at that same showroom. Plaintiff Cathedral Art Metal Co., Inc.'s ("Cathedral Art") claims arise out of those activities. Those and other contacts provide specific jurisdiction. Divinity has more than sufficient minimum contacts with Georgia that it should reasonably anticipate being haled into court here. Cathedral Art respectfully submits that Divinity's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) should be denied.

---

waived further objection.").

Defendants also move to dismiss Claims II and VI for failure to state a claim related to trade dress infringement. While that motion should also be denied, Cathedral Art addresses and resolves it by filing an amended complaint providing an even more detailed statement of its trade dress and those claims. While Cathedral Art disagrees that its original pleading failed to provide appropriate notice of its trade dress claim and a plausible entitlement to relief, Cathedral Art seeks to efficiently and economically join the issues and close the pleadings. Cathedral Art respectfully submits that Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) should also be denied.

## II.   <u>STATEMENT OF FACTS</u>

This case arises from the actions of Defendants Divinity and Nicole Brayden Gifts, LLC ("Nicole Brayden") (collectively, "Defendants") at the January 2018 Atlanta Gift Show. Cathedral Art brought this action after Defendants began to market and offer for sale its "replacement" collection of "Amazing Woman" products that essentially copied Cathedral Art's genuine AMAZING WOMAN products. While the Court is aware of the facts of this case, Cathedral Art highlights the following jurisdictional facts.

Divinity is an *active* Ohio limited liability company. (Cogburn Decl., ¶ 3 & Exh. B.) Mr. Schwartz is the sole incorporator and current President of Divinity (and

Nicole Brayden) (*Id.*; Jan. 24 Tr. at 75:13-20; Dkt. No. 6-1 at 8-10 (Ex. B showing Mr. Schwartz's LinkedIn page); Divinity maintains a website at "divinityboutique.com":



(*See* Cogburn Decl., ¶¶ 5-8 & Exhs. D-G.) The "WHOIS" report for the "divinityboutique.com" domain names identifies the "Registrant Organization" as Divinity Boutique. (*Id.* at ¶ 4 & Exh. C.) The "divinityboutique.com" domain name is registered to Divinity until July 4, 2019, and the "Registrant Organization" address matches that provided for Divinity Boutique, LLC in the Ohio Secretary of State records.[2] (*Id.*) The "divinityboutique.com" website confirms its corporate status:

---

[2] 18807 Miles Road, Warrensville Heights, Ohio 44128.

4

> Divinity Boutique is a gift <u>company</u> that is focused on contemporary and fun gifts . . . . We launch over 1,000 new items every year, so check back often to see the new, trendy, and fun additions to our product line from our great in-house design team . . . .

(*Id.* at ¶ 8 & Exh. G (emphasis added).) The "divinityboutique.com" website is interactive – customers can order product at "orders@divinityboutique.com" and reach customer service at "customerservice@divinityboutique.com." (*Id.* at ¶ 6 & Exh. E.) Similarly, as the Court already noted, Defendants' employees have and use e-mail addresses that include "@divinityboutique.com." (Dkt. No. 40 at 27, n.10; *see also* Dkt. No. 24-2 at 7.)

Divinity operates a permanent "Divinity Boutique" showroom at the AmericasMart in downtown Atlanta.[3] (Am. Compl., ¶¶ 28, 53.) The address of that showroom is 230 Peachtree Street, Building 2, showroom 1340. (Cogburn Decl., ¶ 9 & Exh. H.) AmericasMart recognizes the operative entity is "Divinity Boutique." For example, the 2018 Guide indicates that "Divinity Boutique" maintained a permanent showroom on the 13th Floor of Building 2 of the AmericasMart. (*Id.* at ¶ 2 & Ex. A, pp. 205, 603 (indicating that "Divinity Boutique" is <u>not</u> "(T)emporary").) Mr. Schwartz's declaration does not indicate otherwise. It is safe to presume that if

---

[3] The "temporary" showrooms are identified in a separate section of the Atlanta Buyers Guide for the January 2018 Atlanta Gift Show ("the 2018 Guide"). (Cogburn Decl., ¶ 2 & Ex. A, pp. 62-64, 603.)

Nicole Brayden was, in fact, the lessee of this showroom space, Defendants would have provided such evidence.[4] In contrast, Cathedral Art's Complaint makes repeated references to Divinity having a showroom in Atlanta. (*See* Compl., Dkt. No. 1, ¶ 38 ("Abbey Press and Divinity Boutique shared a leased booth space at the [AmericasMart]"); ¶ 50 ("The Divinity Boutique showroom of the Atlanta Gift Show also features unauthorized copies . . . ."); ¶ 51 ("In fact, the portion of the Divinity Boutique showroom display dedicated to its infringing 'Amazing Woman' products . . . ."); ¶ 52 (references the "Divinity Boutique Atlanta Gift Show product showroom"); ¶ 53 (references the "Defendants' showroom").) Mr. Schwartz's Declaration does not contest that "Divinity Boutique" is the lessee of the permanent Atlanta showroom.[5]

Divinity's Atlanta showroom was open for the January 2018 Atlanta Gift Show, and was manned, in part, by its President, Mr. Schwartz, and that showroom was open to the public from "January 9-16." (*Id.* at ¶ 2 & Ex. A, pp. 205.) The Guide never mentions co-Defendant Nicole Brayden, but repeatedly mentions "Divinity

---

[4] As and if necessary, Cathedral Art respectfully requests leave for jurisdictional discovery to confirm this fact.

[5] As to the motion to dismiss, the uncontroverted allegations of the Complaint are taken as true. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) ("The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.").

Boutique."[6] Under Mr. Schwartz's direction, Divinity offered for sale its infringing

"Amazing Woman" product line in its Atlanta showroom. Those products displayed

not only the word mark "Amazing Woman," but also displayed a stylized version of

that trademark and the "Recipe for an Amazing Woman Poem." (Am. Compl. at

¶¶ 54-55.)  The Divinity products were provided with a flora and/or fauna theme

(*e.g.*, trees, leaves, florals, and butterflies) and in shades of blue, earthy greens, and

touches of orange and red that were similar to Cathedral Art's distinctive

presentation. (*Id.* at ¶ 55.) Those products were shown in a special display at

Divinity's Atlanta showroom. (Dkt. No. 40 at 9-10.) In fact, that same display is still

present, and visible, in that same Divinity showroom. (Cogburn Decl., ¶ 11 & Ex.

J.)

Divinity continues to have a presence in Georgia. In fact, Divinity has and

continues to transact business in Georgia. For example, the current AmericasMart

website not only identifies "Divinity Boutique" as the party occupying the

showroom in Building 2, space 13-1340, but also as the party exhibiting products at

the upcoming "Atlanta Spring Gift, Home Furnishings and Holiday Market," taking

---

[6] Importantly, co-Defendant Nicole Brayden – for which jurisdiction is not challenged – is <u>not</u> listed as an exhibitor. Yet further, Defendants Divinity and Nicole Brayden both appear to be closely-held companies, and Mr. Schwartz is the President of both companies. (Jan. 24 Tr. at 74:21-75:2.)

place March 7-9, 2018. (Cogburn Decl., ¶¶ 10, 12 & Exhs. I & K.) Divinity also continues to maintain its website offering products to Georgia customers. Further, Divinity continues to offer goods to Georgia residents through the Internet at its website – divinityboutique.com.

While Mr. Schwartz's declaration states, without explanation, that Divinity is "not operational" and "does not practice business and has not for many years" (Dkt. 46-3, ¶¶ 9, 11), those statements are rebutted by the foregoing facts. For example, Mr. Schwartz's assertion that Nicole Brayden owns and operates the "divinityboutique.com" website (*see id.* at ¶ 8) is belied by the "WHOIS" report for that domain name (*see* Cogburn Decl., ¶ 4 & Exh. C.) Similarly, Divinity is known to both the AmericasMart and the public as the entity that leases and displays product at the "Divinity Boutique" showroom in downtown Atlanta. (*See id.* at ¶¶ 2, 9, 12 & Exhs. A, H, K; *see also* Dkt. No. 14-2 at ¶ 22; Jan. 24 Tr. at 41-42.) The use of "Divinity Boutique" is not merely as a fictitious name.

Moreover, Mr. Schwartz, as the President of Divinity, was found, served, and accepted service of Cathedral Art's Complaint in Divinity's Atlanta showroom. (*See* Dkt. No. 50 (indicating service upon Mr. Schwartz, President of Divinity, at AmericasMart B2 Floor 13 Booth 1340, 240 Peachtree Street NW, Atlanta GA 30303).)

8

## III.   ARGUMENT AND CITATION OF AUTHORITIES

Defendants' motion to dismiss involves grounds under Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Cathedral Art addresses each in turn.

### A.  Divinity's Motion Under Fed. R. Civ. P. 12(b)(2) Should Be Denied

Pursuant to Fed. R. Civ. P. 12(b)(2), Divinity has moved for dismissal for lack of personal jurisdiction. Because the Court has personal jurisdiction over Divinity, the motion should be denied.

### 1.   Legal Framework

Cathedral Art agrees that courts undertake a two-step inquiry to determine whether personal jurisdiction exists over a non-resident defendant. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). First, whether the state long arm statute provides jurisdiction. Second, whether the defendant has minimum contacts with the forum state and, if so, whether the exercise of jurisdiction could offend traditional notions of fair play and substantial justice. *Id.* at 1295-96. The provisions of the Georgia long-arm statute confer personal jurisdiction over a non-resident defendant to the maximum extent permitted by constitutional due process. *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005). The minimum contacts standard can be met either through specific jurisdiction or general

jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979). Courts will find general jurisdiction wherein the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Courts will find specific jurisdiction where the "defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). These conditions are applied in detail below.

### a.    The Requirements of Georgia's Long Arm Statute Are Met

Georgia's long-arm statue provides that a court may exercise personal jurisdiction over Divinity:

> . . . in the same manner as if [Divinity] were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state . . . ; [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. §§ 9-10-91(1)-(3). Divinity has met all three requirements.

O.C.G.A. § 9-10-91(1) grants jurisdiction where a plaintiff's cause of action

"arise[s] from" a nonresident defendant's "transact[ion] of any business within [Georgia]." O.C.G.A. § 9-10-91(1); *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1264 (11th Cir. 2010). O.C.G.A. § 9-10-91(2) grants jurisdiction where a nonresident defendant "[c]ommits a tortious act or omission within this state." Jurisdiction is proper under this provision where "the nonresident defendant has purposefully done some act or consummated some transaction in Georgia," *Diamond Crystal*, 593 F.3d at 1264, and "the cause of action arises from or is connected with such act or transaction," *Henriquez v. El Pais Q'Hubocali.com*, 500 Fed. Appx. 824, 828 (11th Cir. 2012). The non-resident defendant need not physically enter the state. *Diamond Crystal*, 593 F.3d at 1264. Instead, courts may consider the nonresident's mail, telephone calls, Internet activity and other intangible acts or contacts. *Id.* The question is whether, upon analysis of all the defendant's tangible and intangible conduct, "it can fairly be said that the nonresident [defendant] has transacted any business within Georgia." *Id.*

Divinity transacts business within Georgia for purposes of subsections (1) and (2). Divinity maintains a *permanent* AmericasMart showroom under its corporate name "Divinity Boutique." (*See* Dkt. 23-4, Schwartz Decl., ¶ 3; *see also* Cogburn Decl., ¶ 9 & Exh. H.) Divinity used that showroom during the 2018 Atlanta Gift Show to market, display, offer for sale, and sell products, including its infringing

11

"Amazing Woman" collection that is at issue in this case. Divinity's President, Mr. Schwartz, was in Atlanta to transact that business. The list of "Exhibitors" at the AmericasMart confirms that "Divinity Boutique" is still an exhibitor in Atlanta, as it is listed as an Exhibitor for the upcoming Spring show in March. (Cogburn Decl., ¶ 12 & Exh. K.) In contrast, Nicole Brayden is *not* identified as an Exhibitor or otherwise associated with the showroom.

Divinity's claim of not being "operational" is without merit. Divinity has been and continues to be active in the jurisdiction. Divinity's claim of being merely a "brand" is merely a contrived accounting convenience. The fact that a sale is considered by Mr. Schwartz to be made by Nicole Brayden does not change the fact that Divinity was involved in the sales process and transacting business in Georgia.[7] Divinity is transacting business in Georgia regardless of how the Defendants have decided to track sales or allocate finances. Divinity also, at minimum, committed a tortious act in Georgia by participating in the sales process as the showroom host.

---

[7] Given that these two closely held companies are essentially an extension of Mr. Schwartz, a "Nicole Brayden sale" may be considered a "Divinity Boutique sale." Mr. Schwartz identifies no other shareholders and is the sole incorporator. If necessary, Cathedral Art stands ready to conduct jurisdictional discovery into such corporate details. Moreover, as the sole "managing member" and officer of Divinity, Mr. Schwartz's acts of selling the infringing "Amazing Woman" products may be imputed to Divinity. *See, e.g.*, *Autumn Cashmere, Inc. v. IMMA, L.L.C.*, No. 08-cv-11593, 2008 WL 2478322 (E.D. Mich. June 17, 2008).

Subsections (1) and (2) of Georgia's long-arm statute are met.

As to subsection (3), the injury to Cathedral Art occurred in this jurisdiction. Cathedral Art also has a showroom in Atlanta, very near to the "Divinity Boutique" showroom. By offering goods for sale via the Internet (an act outside of the state), Divinity has harmed Cathedral Art's efforts to sell its genuine AMAZING WOMAN goods at its Georgia showroom (an injury within the state). Further, in maintaining a permanent showroom at the AmericasMart in downtown Atlanta, Divinity "regularly does [and] solicits business, [and] engages in [a] persistent course of conduct . . . in the state." O.C.G.A. § 9-10-91(3). Thus, the third requirement is also met. The Georgia long-arm statute confers jurisdiction over Divinity.[8]

### b.     The Due Process Requirements Are Met

"Once a statutory basis for long-arm jurisdiction is established, the remaining question is whether the exercise of personal jurisdiction comports with due process." *United States v. Billion Int'l Trading, Inc.*, No. 1:11-cv-2753, 2012 WL 1156356, at *3 (N.D. Ga. Apr. 5, 2012) (Duffey, J.); *see Diamond Crystal*, 593 F.3d at 1267.

"Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp. v.*

---

[8] *See, e.g.*, *Renaissance Health Pub., LLC v. Resveratrol Partners, LLC*, 982 So. 2d 739 (Fla. Dist. Ct. App. 2008).

*Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). The non-resident defendant must have "fair warning" that its activity will subject it to jurisdiction in the forum state. *Railcar Ltd. v. S. Ill. Railcar Co.*, 42 F. Supp. 2d 1369, 1372 (N.D. Ga. 1999) (citation omitted). "The fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Diamond Crystal*, 593 F.3d at 1267. A non-resident defendant may be subject to "specific" jurisdiction when (1) it has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction will not offend "traditional notions of fair play and substantial justice." *Id.*

In order to fulfill the "minimum contacts" requirement, a plaintiff must demonstrate: (1) that the plaintiff's cause of action "arises out of or relates to" the defendant's contacts with the forum state; (2) that the defendant "purposefully availed" itself of conducting activities within the forum state and invoked the benefits and protection of the forum state's laws; and (3) that the defendant should have reasonably anticipated being haled into court in the forum state. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 (11th Cir. 1996). A single act can be sufficient to confer specific jurisdiction over a defendant. *See Murphy v. Aventis Pasteur, Inc.*, 270 F. Supp. 2d 1368, 1378 (N.D. Ga. 2003).

Here, Divinity's contacts with Georgia go well beyond those necessary to satisfy the "minimum contacts" standard. Divinity actively exhibits, markets, and sells products in its permanent AmericasMart showroom in Atlanta. Cathedral Art seeks to redress harm caused by Divinity's exhibition, offer for sale, and sale of the offending "Amazing Woman" product line in that showroom at the 2018 Atlanta Gift Show. Divinity argues that minimum contacts do not exist and the exercise of personal jurisdiction is unfair. Divinity's argument is without merit.

      i.    <u>The present cause of action arises out of or relates to Divinity's<br>contacts with Georgia</u>

The present cause of action includes, *inter alia*, claims of trademark and trade dress infringement. Such claims are directly related to Divinity's offering of competing "Amazing Woman" products at the 2018 Atlanta Gift Show, which took place in Georgia and within this District.

      ii.    <u>Divinity purposefully availed itself of the privilege of conducting<br>business activities in Georgia</u>

Divinity and Mr. Schwartz have had and continue to have substantial contacts with Georgia. Most telling, Divinity maintains a permanent showroom in Atlanta. As shown above, the exhibitor for that showroom is "Divinity Boutique." The other defendant in this case – Nicole Brayden – is not listed separately as an exhibitor. Mr. Schwartz, Divinity's President, was at that showroom marketing and selling the

offending products in January of 2018, and he was in the showroom when served with this course of action. Divinity continues to exhibit and market products at the AmericasMart, including the upcoming Atlanta Spring Show. Divinity has thus purposely availed itself of the privilege of conducting business in Georgia and is effectively "at home" in Georgia. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

iii.   It is reasonable to hale Divinity into Court in Georgia

Divinity first invoked the benefits and protections of Georgia laws when it voluntarily chose to enter Georgia and this District to lease a permanent showroom and thereafter to market and offer for sale its products, including those that are the subject of this suit, at that showroom. Furthermore, Divinity's website indisputably was, and continues to be, accessible to Georgia residents. Divinity not only has a permanent showroom at the AmericasMart Atlanta, but has also deliberately and voluntarily done business in Georgia and sought business from Georgia customers. Given that Divinity has offered and marketed its products at the AmericasMart Atlanta, Divinity should have reasonably expected to be haled into a Georgia Court. It is reasonable for Divinity to defend in Georgia.

iv.   Exercise of jurisdiction over Divinity will not offend "traditional notions of fair play and substantial justice"

The burden on Divinity to defend in this jurisdiction does not offend

16

traditional notions of fair play and substantial justice.

First, there is no indication that jurisdiction here in unreasonable. Given the general presumption that a non-resident defendant's deposition will be held where it resides, and in view of the conveniences of modern communication and transportation ease, there is no serious burden with subjecting Divinity to jurisdiction in this Court. *See also Billion Int'l Trading*, 2012 WL 1156356, at *4 ("[T]here is no significant burden imposed on this Defendant in having to litigate in a state where it has transacted business.").

Second, Georgia has an interest in discouraging injuries, including injuries as a result of conducting business within its borders.

Third, Divinity's improper competing activities and its infringing "Amazing Woman" product line have caused Cathedral Art's damages and irreparable injury. Thus, Cathedral Art has a substantial interest in obtaining convenient and effective relief in the venue of its choosing.

**B.   Defendants' Motion Under Fed. R. Civ. P. 12(b)(6) Should Be Denied**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Divinity and Nicole Brayden have moved to dismiss Counts II and VI for failure to state a claim upon which relief may be granted. That motion should also be denied.

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint.

17

*See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). A claim will fail this test if it asserts a legal theory that is not cognizable as a matter of law or if the factual allegations are implausible. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The pleading must contain enough information to give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* In other words, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).

Here, Cathedral Art's allegations in the Verified Complaint more than met these requirements. For example, Cathedral Art's original paragraph 55 states:

> 55.    In view of the foregoing, on information and belief, Divinity Boutique and/or Brayden Gifts have recently begun manufacturing, promoting, and selling products that unlawfully bear the AMAZING WOMAN trademark and AMAZING WOMAN trade dress, as well as other products that copy the Abbey Press gift line, including serving dishes, spoon rests, glass cutting boards, coasters, coaster mugs, plaques, pie plates, and mugs. The subject Defendants' products unlawfully bear the AMAZING WOMAN trademark and display a trade dress that includes the AMAZING WOMAN trademark, a stylized presentation of the AMAZING WOMAN mark against a soft background color, such as the green-and-blue color scheme, and text that espouses traditional feminine values and attributes, and other

18

design characteristics of the traditional Abbey Press products.

(Compl., Dkt. No. 1, ¶ 55.) Cathedral Art provided both text and visuals to describe its trade dress. (*Id.* at ¶¶ 1, 2, 19, 55.) Defendants' comparison to a "bare bones" trade dress described as "distinctive material finish, shape, and exterior design" is misplaced.  (Mot., Dkt. No. 46-1, p. 14.)

The definition of trade dress is necessarily and understandably broad. It can be, for example, "essentially [a business'] total image and overall appearance." *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989). It can include "features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John J. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). Contrary to Defendants' contentions, Cathedral Art's trade dress was adequately described and shown, and was in line with trade dress definitions approved by the Supreme Court. For instance, in *Two Pesos, Inc. v. Taco Cabana, Inc.*, the Supreme Court ultimately affirmed the following trade dress description for a Mexican restaurant:

> a festive eating atmosphere having interior dining and patio areas decorated with artifacts, bright colors, paintings and murals. The patio includes interior and exterior areas with the interior patio capable of being sealed off from the outside patio by overhead garage doors. The stepped exterior of the building is a festive and vivid color scheme using top border paint and neon stripes. Bright awnings and umbrellas continue the theme.

19

505 U.S. 763, 765 (1992). Cathedral Art's description of its trade dress was in line with what the Supreme Court found to be acceptable in *Two Pesos*.

Nonetheless, rather than engage in a legal debate over the merits of its trade dress, Cathedral Art amends the description of its trade dress in the Complaint to read:

> [T]he AMAZING WOMAN trade dress was comprised of design and textual elements that were used, both individually and collectively, in association with homeware and giftware products to produce a unique, overall feminine theme and feel. Two key elements of the AMAZING WOMAN trade dress included: 1. a stylized presentation of the word mark AMAZING WOMAN; and 2. a Recipe Poem entitled "Recipe for an Amazing Woman," including a stylized presentation of the word mark AMAZING WOMAN in conjunction with the "Recipe Poem." The stylized presentation of the mark AMAZING WOMAN utilized a feminine handwriting style or script and included a capital "A" and "W." The "Recipe Poem" utilized a series of instructional or directional statements that each start with an active verb (*e.g.*, "start," "mix," "add," etc.) and use traditional feminine characteristics, such as faith, honesty, humility, etc., as ingredients to "yield" an "amazing YOU!" More particularly, the Recipe Poem stated:
>
> 
>
> **Recipe For An Amazing Woman**[TM]
> Start with faith and honesty.
> Mix in pure humility.
> Add strength of character that rises
> above the stress of life's surprises.
> Fold in personality.
> Toss with generosity.
> Pour in love from a heart that's true…
> Yield: one terrific, amazing YOU!
>
> 
>
> These elements were used in conjunction with a flora and fauna theme with artistic elements from nature such as trees, leaves, florals, and

butterflies. The theme was continued by use of a nature motif or theme that uses varying shades of blue, earthy greens and touches of oranges and reds. These elements were used, both individually and collectively, to ensure that the products offered under the AMAZING WOMAN trade dress evoked a unique feminine theme and feel. These elements, and particularly the stylized presentation of the mark AMAZING WOMAN and the "Recipe Poem," both alone and in combination, distinguished Abbey Press's "Amazing Woman" products from those of its competitors. The relevant public recognized and relied upon the AMAZING WOMAN trade dress elements to identify goods that originated from, or were sponsored and/or approved by Abbey Press (*i.e.*, Cathedral Art's predecessor-in-interest).

(Am. Compl., ¶ 20; *see also id.* at ¶¶ 26, 31, 32, 94.)

In the interest of efficiency and so as not to waste the Court's or the parties' resources, Cathedral Art has also amended its Complaint with respect to its federal unfair competition claim. (*See* Am. Compl., Counts II & VI, ¶¶ 70, 71, 94-96.) Accordingly, Cathedral Art files herewith a First Amended Complaint. Cathedral Art submits that Defendants' motion to dismiss under Rule 12(b)(6) may be denied either on its lack of merit or as moot.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Cathedral Art respectfully submits that Defendants' motion to dismiss should be denied. In the alternative, Cathedral Art requests leaves to conduct jurisdictional discovery, a motion for which is filed concurrently herewith.

Respectfully submitted this 15th day of February 2018.

<u>/s/ Walter Hill Levie III</u>
Stephen M. Schaetzel
Georgia State Bar No. 628653
Walter Hill Levie III
Georgia State Bar No. 415569
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street N.E., Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile: (404) 645-7707
*sschaetzel@mcciplaw.com*
*tlevie@mcciplaw.com*

*Counsel for Plaintiff*
*Cathedral Art Metal Co., Inc.*

Of counsel:

Thomas R. Noel (admitted *pro hac vice*)
NOEL LAW
203 South Main Street, Suite 2
Providence, Rhode Island 02903
Telephone: (401) 272-7400
Facsimile: (401) 621-5688
*tnoel@lawnoel.com*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CATHEDRAL ART
METAL CO., INC.,

       Plaintiff,

    v.

DIVINITY BOUTIQUE, LLC and
NICOLE BRAYDEN GIFTS, LLC
d/b/a DIVINITY BOUTIQUE,

       Defendants.

Civil Action No. 1:18-cv-141-WSD

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

The undersigned hereby certifies that the foregoing **PLAINTIFF CATHEDRAL ART METAL CO., INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

Dated this 15th day of February 2018.

                              <u>/s/ Walter Hill Levie III  </u>
                              Walter Hill Levie III

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CATHEDRAL ART<br>METAL CO., INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>DIVINITY BOUTIQUE, LLC and<br>NICOLE BRAYDEN GIFTS, LLC<br>d/b/a DIVINITY BOUTIQUE,<br><br>   Defendants. | Civil Action No. 1:18-cv-141-WSD |

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that, on this 15th day of February 2018, the foregoing **PLAINTIFF CATHEDRAL ART METAL CO., INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

Dated: February 15, 2018   /s/ Walter Hill Levie III
            Walter Hill Levie III

24